

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED

04 JUL 27 AM 10:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUL 27 2004

| | |
|---|---|
| JOHN KORNEGAY, JR., | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-03-CO-00634-W |
| LAFARGE NORTH AMERICA, INC., | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, John Kornegay, Jr. ("Kornegay"), filed suit against the defendant, LaFarge North America, Inc., on March 19, 2003. [Doc. # 1, Compl.] Kornegay amended his complaint on June 6, 2003, to add LaFarge Building Materials, Inc., as a defendant (collectively, "LaFarge"). [Doc. # 14, Am. Compl.]

Kornegay alleges he was terminated for excessive tardiness under LaFarge's "point system" — a system Kornegay contends violates the Agreement between Kornegay's Union and LaFarge and was applied to him in an arbitrary and capricious manner.  Kornegay argues that the true reason

he was discharged was because he made complaints about LaFarge's unsafe working conditions. Kornegay asserts that LaFarge failed to follow the Agreement's grievance procedure and he was not afforded an opportunity to challenge his termination.

In his amended complaint, Kornegay seeks a declaratory judgment as to the meaning of the Agreement, relief for breach of contract, retaliatory discharge, fraud, and violation of the Labor Management Relations Act ("LMRA" or "§ 301"), under 29 U.S.C. § 158. [Am. Compl.]

Presently before the court are cross motions for summary judgment, filed by the parties on February 27, 2003 [Doc. # # 38 & 42] and a motion to strike the declaration of Robin Rock and objection to Rock's future testimony, filed by the plaintiff on April 9, 2004 [Doc. # 61]. The issues raised in the motions have been briefed by the parties and are now ripe for decision. Upon due consideration, the court is of the opinion that LaFarge's motion for summary judgment is due to be granted in all respects. Although LaFarge asserted a number of grounds for its motion for summary judgment, the grounds addressed in the opinion are determinative and discussion of the others is pretermitted. For the same reasons LaFarge's motion for summary

judgment is due to be granted, Kornegay's motion for summary judgment is due to be denied.[1]  Kornegay's motion to strike is also due to be denied.

II.    Facts.[2]

Plaintiff Kornegay was an employee of Blue Circle, Inc., from August 3, 1994, to March 26, 2001. [Joint Status Rep.] On May 20, 1999, the PACE International Union ("Union"), Local No. 3-0537, entered into a collective bargaining agreement ("Agreement") with Blue Circle, Inc., which is effective until May 20, 2005. [Joint Status Report.] On August 24, 2001, Blue Circle, Inc. changed its name to LaFarge Building Materials Inc.[3] [LaFarge's Resp. to Pl.'s Req. for Admissions No. 9.]

---

[1]Kornegay moved for summary judgment as to his declaratory judgment claim (Count II) and his claims for breach of contract (Count I) and violation of § 301 (Count V).

[2]The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir. 1994).

[3]For the sake of simplicity, the court will address the defendant as LaFarge throughout this opinion.

Kornegay joined the Union in 2000. [Pl.'s Dep. at 51, 66.] Bobby Watts was Local President of the Union at the time Kornegay joined. [Pl.'s Dep. at 66.] Watts has served as Local President of the Union continuously since 1990, with the exception of 1994. [Watts' Dep. at 20-22.] Emory Barnett was the Union's International Representative. [Kornegay Dep. Ex. 1 at 41.]

Article VI of the Agreement lists a five step procedure for making complaints. [Kornegay's Dep. Ex. 1.] Step 1 provides that the employee shall first discuss any alleged violation of the Agreement with his supervisor and the employee and supervisor must make a good faith effort to resolve the issue. [Id.] If the issue is not settled in Step 1, Step 2 directs the employee to discuss the grievance with the Department Manager or his designated representative. [Id.] Step 3 calls for the employee to put his grievance in writing if it is not settled in Steps 1 or 2. [Id.] The grievance must be signed by the employee and a Union Committee person and presented to the Operations Manager and the Union's International Representative. [Id.] In Step 3, the Operations Manager must schedule a time to meet with the employee, a designated member of the Union Committee, and the International Representative to discuss the grievance. [Kornegay Dep. Ex.

1.] If the grievance is not resolved at this meeting, the Operations Manager is directed to provide his answer in writing. [Id.] Furthermore, if the grievance is not resolved, Step 4 calls for the grievance to be taken before an impartial mediator. [Id.] Step 5 provides for arbitration. [Id.] Article VI, Section 5, of the Agreement states, "Any grievance not processed within the time limits specified in Steps 1, 2, and 3 shall be deemed settled against the party failing to adhere to the prescribed time limits." [Id.]

On December 23, 1997, LaFarge adopted an Absentee Policy and reposted the policy on May 11, 2000. [Kornegay Dep. Ex. 6.] On March 26, 2001, Kornegay's employment with LaFarge was terminated for alleged violations of the Absentee Policy. [Kornegay Dep. Ex. 12.]

Kornegay met with his supervisors to discuss the events leading to his termination. [Kornegay's Dep. at 154-57.] Pursuant to the Agreement, Kornegay filed a Grievance Report on March 27, 2001, alleging that LaFarge applied the point system under the Absentee Policy in an arbitrary manner when it terminated his employment. [Kornegay Dep. Ex. 13.] LaFarge's Step 1 answer was that Kornegay's absenteeism was unacceptable. [Id.] Kornegay then pursued Step 2 to which LaFarge responded that the Absentee

Policy had been applied in a fair and consistent manner. [Id.]  The parties are in disagreement as to the extent the Step 3 requirements were followed.

Kornegay spoke with Union President Watts on a number of occasions after his termination and was told that the Union could not get LaFarge to consider Kornegay's grievance. [Kornegay Dep. at 168.] In August 2002, Kornegay was told by Barnett, Union International Representative, that LaFarge refused to hear his grievance. [Kornegay Dep. at 171-72.]

The Union did not relay to the National Labor Relations Board its problem getting LaFarge to address Kornegay's grievance. [Watts Dep. at 49.] The Union did not file a lawsuit to challenge LaFarge's  noncompliance with the Agreement or to compel LaFarge to mediate or arbitrate Kornegay's grievance. [Watts Dep. at 49.]

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d

1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

A.   Kornegay's Motion to Strike.

Kornegay filed a motion to strike the declaration of Robin Rock and an objection to Rock's future testimony, stating that her testimony is "immaterial, impertinent and scandalous." [Doc. # 61.] However, a Rule 12(f) motion is addressed only to the pleadings and should not be used to object to an affidavit filed in support of a motion. *Smith v. Southeastern Stages, Inc.*, 479 F. Supp. 593, 594-95 (N.D. Ga. 1977). Additionally, the motion to strike is immaterial to the resolution of the pending motions. Accordingly, Kornegay's motion to strike is due to be denied.

B.   Motions for Summary Judgment.

Kornegay states five claims in his amended complaint: (1) a claim that LaFarge breached the collective bargaining agreement; (2) a claim for declaratory judgment regarding the meaning of the Agreement and its application to the facts of this case; (3) a claim that Kornegay complained to management that coworkers were mishandling chemicals and LaFarge

discharged him in retaliation for making those complaints; (4) a claim that LaFarge committed fraud when it represented to Kornegay that he would have a certain level of job security and expectation of continued employment; and (5) a claim that LaFarge violated 29 U.S.C. § 185 of the Labor Management Relations Act.

> 1.   Kornegay's Claims for Breach of Contract, Declaratory Judgment, Retaliatory Discharge, and Fraud (Counts I, II, III, IV).

The Labor Management Relations Act ("LMRA"),  commonly referred to as § 301, states:

> (a) **Venue, amount, and citizenship.**  Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

The Supreme Court found that in enacting § 301, Congress intended "doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962).  In *Lucas*, the Supreme Court held that a suit in state court alleging a violation of a

collective bargaining agreement must be brought under § 301, reasoning that "[t]he possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.* at 103-04.

In *Allis-Chalmers Corp. v. Lueck,* the Supreme Court set forth the standard to assess whether a claim is preempted by § 301.  471 U.S. 202 (1985).  Specifically, the Court stated, "We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor law."  471 U.S. 202, 220 (1985).

In its motion for summary judgment, LaFarge argues that Kornegay's state law claims are pre-empted by § 301 and should therefore be dismissed. As to Kornegay's claims of breach of contract and declaratory judgment, he argues that LaFarge's failure to comply with the Agreement's grievance procedure requires that these claims be decided against LaFarge.  Kornegay argues that his claim for fraud does not require an interpretation of the

Agreement and therefore is not preempted by § 301. Indeed, "[w]here neither the elements of the state cause of action nor the defenses to it would entail any interpretation or analysis of the collective bargaining agreement, preemption does not apply." *Rasheed v. Int'l Paper Co.*, 826 F. Supp. 1377, 1384 (S.D. Ala. 1993); *see Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399 (1988).

The court is of the opinion, however, that Kornegay's state law claims are preempted by § 301and are due to be dismissed. First, Kornegay states in his amended complaint that he "was discharged *in violation of the agreement* between . . . [his] Union, and the Defendants," and "[a] 'point system' was utilized *contrary to the Agreement* and was applied in an arbitrary and discriminatory manner which was also *in violation of the Agreement.*" [Am. Compl., emphasis added] Kornegay alleges loss of income and job security as a result of LaFarge's alleged breach. [Id.] It is clear on the face of Kornegay's complaint that resolution of his breach of contract claim would necessarily entail the court construing the Agreement. Such a claim falls within the preemptive area of § 301and is therefore dismissed. *See Int'l Bhd. Elec. Workers v. Hechler*, 481 U.S. 851, 857 (1987) ("The

ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated.) *See also Darden v. United States Steel Corp.*, 830 F.2d 1116, 1120 (11th Cir. 1987) ("Here, the plaintiffs actually allege a violation of the collective bargaining agreement in their complaints. Having done so, it is disingenuous for them now to maintain that their claims are not 'inextricably intertwined with the consideration of the terms of the labor contract'" "[Plaintiffs] claim lost wages, seniority and job security. Such disputes clearly fall within the pre-emptive scope of § 301.")

Kornegay's second claim requests the court to "declare the meaning of the Agreement and its application to the facts of this case." [Am. Compl.] Just as Kornegay's breach of contract claim requires the court to interpret the Agreement, so does his request for declaratory judgment and is likewise preempted by § 301 and is due to be dismissed.

Kornegay alleges in Count III of his amended complaint that LaFarge violated Alabama Code § 25-1-1 when it discharged him in retaliation for making complaints to management about employees' mishandling chemicals. However, § 25-1-1, which places a duty on an employer to

provide reasonably safe employment for employees, does not give an employee a cause of action for retaliatory discharge. The Alabama Supreme Court addressed the termination of an at-will employee that appeared to be in conflict with public policy and held:

> Through the years, this Court has steadfastly declined to modify the employee-at-will doctrine by recognizing a cause of action sounding in tort for the wrongful termination of an employment contract when the employer's actions were in contravention of this state's public policy, but has chosen, instead, to rely upon legislative action to ameliorate some of the harshness of the employee-at-will doctrine.

*Grant v. Butler*, 590 So. 2d 254, 256-57 (Ala. 1991).

As evidenced by Kornegay's request for this court to recognize such a cause of action under § 25-1-1 [Pl.'s Resp. at 27], it is clear that he cannot sustain his claim for retaliatory discharge under this statute and the court declines Kornegay's invitation to allow such a claim. The court does not attempt to downplay the seriousness of maintaining safe working conditions. However, if the Alabama Supreme Court has declined to create a remedy for at-will employees discharged for reporting dangerous working conditions, it is not this court's place to recognize such a cause of action. Neither has Kornegay alleged that he was wrongfully discharged pursuant to any of the

federal "whistleblower" statutes.  Kornegay's claim for retaliatory discharge
is therefore dismissed.

Kornegay alleges in Count IV of his amended complaint that LaFarge
committed fraud when it made representations in connection with the
Agreement. [Am. Compl.] Kornegay contends that LaFarge had no intention
of honoring the terms of the Agreement. [Id.] LaFarge argues that
Kornegay's fraud claim is preempted by § 301.  Kornegay argues that his
claim for fraud does not require an interpretation of the Agreement and
therefore is not preempted by § 301. To state a claim for fraud under
Alabama law, Kornegay must show that LaFarge knowingly made a
misrepresentation of material fact, that Kornegay relied on the
misrepresentation, and was injured because of his reliance. *Voyager Guar.
Ins. Co., Inc. v. Brown*, 631 So. 2d 848, 850 (Ala. 1993).

Specifically, Kornegay alleges that LaFarge had no intention of
honoring the Agreement or the grievance procedure contained in it although
LaFarge represented that it would.  Kornegay contends that he relied on
LaFarge's representations to his detriment.  In order for the court to
determine whether LaFarge made fraudulent representations to Kornegay,

it would need to determine whether LaFarge actually breached the Agreement and the clauses contained therein. Therefore, contrary to Kornegay's assertions that the court need not interpret the Agreement to find that LaFarge is liable for fraud, the court is of the opinion that it would indeed have to do so. As a result, Kornegay's claim for fraud is preempted by § 301 and is therefore dismissed.

2.      Kornegay's § 301 Claim (Count V).

Kornegay alleges in Count V of his amended complaint that LaFarge violated § 301 of the Labor Management Relations Act by not honoring and abiding by the Agreement. It is well settled that an employee may bring a cause of action against his employer for breach of a collective bargaining agreement. *See Smith v. Evening News Assn.*, 371 U.S. 195 (1962). However, if a collective bargaining agreement provides for a dispute resolution procedure, an employee must exhaust that avenue before bringing suit against his employer. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1975).

Although represented by the Union in contesting his termination, Kornegay has elected to bring this action himself against LaFarge. An "employee['s] decision for union representation means exclusive representation, not only for purposes of collective bargaining, . . . , but also for prosecuting the individual grievances that arise during the administration of the contract." *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 885 (11th Cir. 1985). In *Samples*, the Eleventh Circuit conceded that this restriction may hamper the employee's ability to vigorously pursue his personal grievance, but reasoned that "the basic premise of unionism is that such a sacrifice on the individual's part is more than outweighed by the benefits that accrue to him when his union can act with the assurance that it speaks with the exclusive voice of all its members." *Id.* at 885-86.

LaFarge asserts that Kornegay cannot pursue this action because he failed to exhaust the grievance process available to him under the Agreement.   Kornegay contends that he did not exhaust the grievance process provided for in the Agreement because LaFarge failed to follow the complaint procedure.  The courts are not oblivious to the fact that a union could also be less than willing to properly pursue an employee's claim

through the grievance procedure.  Therefore, holding fast to the principles underlying unionism, the Supreme Court held that a "wrongfully discharged employee may bring an action against his employer in the face of a defense based on failure to exhaust contractual remedies, *provided* the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967) (emphasis added). As a result, the courts have permitted § 301/ fair representation "hybrid" suits, in which the employee brings suit against his employer for breach of the collective bargaining agreement *and* against his Union for breach of the duty of fair representation, due to the Union's handling of his grievance. *Id.* at 886. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). "Yet the two are inextricably interdependent." *United States Parcel Serv. v. Mitchell,* 451 U.S. 56, 66-67 (1981).  Thus, "[t]o prevail against either the company or the Union, [an employee] must not only show that their discharge was contrary to the contract but must also carry the burden of

demonstrating breach of duty by the Union." *Hines v. Anchor Mortgage Freight, Inc.*, 424 U.S. 554, 570 (1976).

Kornegay, however, does not contend that his Union represented his grievance inadequately.  Indeed, he states in his response to LaFarge's motion for summary judgment that  he "did not file suit against the union because he knew of nothing that [the] union did wrong." [Pl.'s Resp. at 20.] However, the above cited cases provide that where there has been a failure to exhaust contractual remedies, as in this case, Kornegay must establish inadequate representation by his Union before prevailing against his employer in his § 301 claim.  As Kornegay has not alleged any wrongdoing on the part of his Union, his § 301 claim against LaFarge must fail.  Moreover, even if the court treated Kornegay's state law claims as § 301 claims, they would still fail as Kornegay has not carried his burden of demonstrating a breach of duty by the Union.

3.    Applicable Statute of Limitations.

Aside from the insufficiency of Kornegay's complaint, his claims are time barred. The Supreme Court has "adopted the six-month statute of limitations found in section 10(b) of the National Labor Relations Act, 29

U.S.C. § 160(b), for all such hybrid cases." *Coppage v. United States Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002) (discussing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-71) (1983). Kornegay contends that the six month statute of limitations did not commence until March 2003, when he "gave up hope" and filed the present lawsuit. [Pl.'s Br. at 18.] However, when an employee "gives up hope" does not dictate when the statute of limitations begins to run. Indeed, the Eleventh Circuit has held that "the timeliness of a § 301 suit is measured from the date the plaintiff knew or should have known of the Union's final action or the employer's final action, whichever is later." *Adams v. United Paperworkers Int'l Union A.F.L.-C.I.O.*, 189 F.3d 1321, 1322 (1999); *see Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986). The Court further held "final action" to mean "the point at which the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." *Proudfoot*, 779 F.2d at 1559.

"When the cause of action accrued is normally a question of fact . . . though in certain instances the issue can be resolved on a motion for summary judgment." *Hill v. Georgia Power Co.*, 786 F.2d 1071, 1075 (11th

Cir. 1986).  Kornegay stated in his deposition testimony that he had been

informed by Union officials that LaFarge refused to hear his grievance.

> A: I was kept in communication with the union officials.  They
> told me step by step what would happen, what had been
> happening at the meetings, that they, the company
> representative was refusing to hear most of the grievances.  They
> were having difficulty getting any of the grievances to the table
> to be discussed was what they told me.
>
> Q: Who told you that?
>
> A: Bobby Watts.
>
> Q: When did Mr. Watts tell you that?
>
> A: He told me that about every time I called him.
>
> Q: When is the first time that he told you that?
>
> A: I don't recall.  I know that I called him several times within
> the next few months and that was basically the answer that I got.

[Kornegay Dep. at 168.] Kornegay testified that around August 2002, Emory

Barnett also told him that LaFarge refused to hear his grievance.

> A.    I asked Mr. Barnett what was going on and he told me the
> same thing, that they were refusing to hear my case or
> review my grievance or whatever terminology they use.

[Kornegay Dep. at 171-72.]

On a number of occasions after Kornegay's termination in May 2001, Watts informed him that the grievance procedure was stalled due to LaFarge's unwillingness to proceed.  Kornegay stated that, around August 2002, Emory Barnett told him that the company refused to hear his grievance.  It is not evident from Kornegay's deposition testimony when Watts informed him that LaFarge refused to hear his claim — only that Watts told him the same thing "every time [Kornegay] called him" — but it is clear that Watts conveyed that information to him on a number of occasions after he was terminated in March 2001.  Watts' statements to Kornegay regarding the Union's problems getting LaFarge to address Kornegay's grievance was reinforced by Kornegay's conversation with Barnett in August 2002 when he was told that the company refused to hear his claim.

Although it is evident that Kornegay knew earlier that the Union was not able to get his grievance heard, he has admitted to knowing in August 2002 that LaFarge refused to hear his grievance.  Thus, Kornegay knew then that the grievance procedure had "broke[n] down to [his] disadvantage."  Therefore, although the court has held that Kornegay's claims are due to be

dismissed on other grounds, alternatively, Kornegay's claims are also time barred.


V.    Conclusion.

In sum, the court is of the opinion that LaFarge's motion for summary judgment is due to be granted in all respects.  For the same reasons, Kornegay's motion for summary judgment is due to be denied.  Additionally, Kornegay's motion to strike is due to be denied.  The court will enter an appropriate order in conformity with this memorandum of opinion.


Done, this _____ of  July, 2004.


L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE